**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JOAN WRIGHT, individually and on behalf of others similarly situated,<br><br>                            Plaintiff,<br><br>   v.<br><br>ULTA SALON, COSMETICS & FRAGRANCE, INC.,<br><br>                        Defendant. | Case No. 22-cv-1954-BAS-BLM<br><br>**ORDER:**<br><br>**(1) GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR LEAVE TO FILE THE SECOND AMENDED COMPLAINT (ECF No. 14); and**<br><br>**(2) TERMINATING AS MOOT DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT (ECF No. 13)** |

Before the Court is Plaintiff Joan Wright's Motion for Leave to File her Proposed Second Amended Complaint ("Motion"). (*See* Mot., ECF No. 4; Mem. in Supp. of Mot. ("Mem."), EC No. 14-1; Proposed Second Am. Compl. ("Proposed SAC"), ECF No. 14-3.) Defendant Ulta Salon, Cosmetics & Fragrance, Inc. ("Ulta") opposes (Opp'n, ECF No.

15), citing essentially the same grounds for dismissal that it proffered in its Motion to Dismiss Wright's First Amended Complaint (Mot. to Dismiss ("MTD"), ECF No. 13-1). Wright replies.  (Reply, ECF No. 16.)

The Court finds the Motion suitable for determination based upon the papers submitted and without oral argument.  *See* Fed. R. Civ. P. 78(b); Civ. L.R. 7.1(d)(1).  For the reasons stated below, the Court **GRANTS IN PART** and **DENIES IN PART** Wright's Motion for Leave (ECF No. 14) and **TERMINATES AS MOOT** Ulta's Motion to Dismiss the First Amended Countercomplaint (ECF No. 13).

## I.    BACKGROUND[1]

Ulta, an Illinois-based beauty and cosmetics retailer, owns and operates www.ulta.com (the "Website"), on which it sells products.  (Proposed SAC ¶¶ 28, 37–38.)  Embedded in the HTML code of the Website is JavaScript computer code written by third-party Quantum and installed on Ulta's servers is Quantum's session replay spyware.  (*See id.* ¶¶ 6–7, 45–46.)  Quantum's JavaScript and spyware enables it and Ulta to "see the screens" of Website users and to "tap, record, and share users' 'sessions'" on the Website.  (*See id.* ¶¶ 44–45.)  That is, "[w]hen consumers visit [the] [W]ebsite, the JavaScript immediately loads onto their device . . . and is stored in their device's cache or temporary internet files."  (*Id.* ¶ 47.)  "[T]he spyware then monitors and records communications the device sends to, and receives from, [Ulta's] servers while the consumer browses [the] [W]ebsite."  (*Id.* ¶ 48.)  "The communications are still allowed to travel their normal path between the consumer's device and [Ulta]'s servers, but the communications are tapped and copied and sent to Quantum's serves as well." (*Id.* ¶ 49 .)

---

[1] The facts are taken from Wright's Proposed Second Amended Complaint (ECF No. 14-3), to which the presumption of truth attaches for the instant Motion.  *See, e.g.*, *Ahmad v. Day*, --- F. Supp. 3d ----, 2022 WL 17970160, at *1 (S.D.N.Y. Dec. 28, 2022) (holding that courts must assume the allegations of a proposed amended complaint to be true for the purpose of ruling on a motion to amend).

Quantum allegedly used the communications it tapped and recorded for Ulta "for its own commercial benefit." (Proposed SAC ¶¶ 79–80.)  The terms of and conditions that govern Ulta and Quantum's business relationship state:

> Quantum shall have the right to *collect and analyze* data and other information relating to the provision, use and performance of various aspects of the Quantum Service and related systems and technologies (including without limitation, information concerning Customer Data and data derived therefrom), and Quantum will be free (during and after the Term) to use such information and data to improve and enhance the Quantum Technology and for other development, diagnostic, and corrective purposes in connection with the Quantum Service and other Quantum offerings, and to *disclose* such data solely in aggregate or other de-identified form in connection with its business.

(*Id.* ¶ 80 (emphasis added).)

At some point between April 2022 and April 2023, Wright, a resident of San Diego County, visited the Website from her "cell phone" and/or "other mobile device[] to shop for products." (Proposed SAC ¶ 27, 37.)  Once the Website loaded on Wright's mobile web browser, Wright's "phone began sending and receiving electronic communications in the form of instructions to and from [Ulta]'s computer servers utilized to operate its [W]ebsite." (*Id.* ¶ 40.)  "The commands were sent as messages indicating to [Ulta] what words and text were typed, any credit card number entered, CVV code, billing zip code, first name, last name, phone number, address, email address, any search terms entered, and what content was being clicked, requested, and inputted, . . . including any products ordered." (*Id.*) Through its spyware, Quantum, at the direction of Ulta, learned this information and more, including "the pages and content" Wright viewed, her "scroll movements," "words and text typed even if not fully entered, copy and paste actions, any search terms (even if not fully entered), mouse clicks and movements, keystrokes," among other things. (*Id.* ¶ 41; *see also id.* ¶ 52 (explaining in programmatic terms how Quantum's spyware operates).)

Wright alleges she had no clue that Ulta enabled Quantum to view and record her communications, and "reasonably expected that [her] visits to [the] [W]ebsite would be

private."  (Proposed SAC ¶¶ 54–55.)  And while she acknowledges that disclosures on Ulta's website indicated Ulta uses "spyware," it does not disclose that the data the spyware captures will be "collected," "analyzed," or "distributed" by third-party Quantum.  (*See id.* ¶¶ 57–58 (describing Ulta's Privacy Policy in effect on August 10, 2022); ¶¶ 61–62 (December 29, 2022 Privacy Policy).)  Hence, Wright avers Ulta and Quantum did not obtain the necessary consent prior to tapping, recording, collecting and analyzing, and then disclosing her communications.  (*Id.* ¶¶ 62–63.)

Wright commenced this putative class action against Ulta on December 9, 2022. (ECF No. 1.)  She subsequently filed her First Amended Complaint, which asserts claims under Sections 631, 632, and 632.7 of the California Invasion of Privacy Act ("CIPA") and a claim under the federal Wiretap Act.  (First Am. Compl., ECF No. 11.)  Ulta moved to dismiss the First Amended Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6).  (*See generally* MTD.)  Rather than respond, Wright filed her Motion for Leave to Amend.  (ECF No. 14.)  Her proposed amendments delete her claims under Section 632 of CIPA and the federal Wiretap Act and add additional details about, *inter alia*, Quantum's spyware, the technology Wright used to access the Website, and the terms and conditions of Ulta and Quantum's engagement.

## II.  LEGAL STANDARD

Rule 15(a) governs amended pleadings.  Rule 15(a)(1) confers litigants with a right to amend once as a matter of course and Rule 15(a)(2) covers all other amendments.  When the latter applies, "a party may amend its pleading only with the opposing party's written consent or the court's leave."  Fed. R. Civ. P. 15(a)(2).  Because Ulta does not consent to Wright's proposed amendments, the Court must determine whether to grant leave to Wright to amend.

Under Rule 15(a)(2), granting leave to amend rests within the trial court's sound discretion.  *Swanson v. U.S. Forest Serv.*, 87 F.3d 339, 343 (9th Cir. 1996).  However, "[i]n exercising its discretion, a court must be guided by the underlying purpose of Rule 15—to facilitate decision[s] on the merits rather than on the pleadings or technicalities."  *DCD*

*Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987) (quotation marks omitted). The policy behind that Rule—that courts should freely grant leave to amend—"is to be applied with extreme liberality." *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990). "[S]ince Rule 15 favors a liberal policy towards amendment, the nonmoving party bears the burden of demonstrating why leave to amend should not be granted." *Genentech, Inc. v. Abbott Labs.*, 127 F.R.D. 529, 530–31 (N.D. Cal. 1989) (citing *Senza-Gel Corp. v. Seiffhart*, 803 F.2d 661, 666 (Fed. Cir. 1986)).

Still, courts have discretion "to deny leave to amend due to . . . 'futility of amendment.'" *Nat'l Council of La Raza v. Cegavske*, 800 F.3d 1032, 1045 (9th Cir. 2010); *see Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995) ("Futility of amendment can, by itself, justify the denial of a motion for leave to amend."). "[A] proposed amendment is futile only if no set of facts can be proved under the amendment . . . that would constitute a valid and sufficient claim[.]" *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988). Thus, the test of futility is identical to the one applied when considering challenges under Rule 12(b)(6) for failure to state a claim upon which relief may be granted. *See Nordyke v. King*, 644 F.3d 776, 788 n.12 (9th Cir. 2011) ("[The] proper test to be applied when determining the legal sufficiency of a proposed amendment is identical to the one used when considering the sufficiency of a pleading challenged under Rule 12(b)(6)." (citation and quotation marks omitted)), *rev'd per curiam on other grounds*, 681 F.3d 1041 (2012); *accord Glassman v. Computervision Corp.*, 90 F.3d 617, 623 (1st Cir. 1996) (holding an amendment is futile if, as amended, the plaintiff still fails to state a claim upon which relief could be granted).

Rule 12(b)(6) tests the legal sufficiency of the allegations underlying the claims in a complaint. *See Navarro v. Block*, 250 F.3d 729, 731 (9th Cir. 2001). The procedural posture at Rule 12(b)(6) requires the court to accept all factual allegations pleaded in the complaint as true and to construe those allegations, and draw all reasonable inferences therefrom, in favor of the plaintiff. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). "A Rule 12(b)(6) dismissal may be based on either a 'lack of cognizable

- 5 -

legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'" *Johnson v. Riverside Healthcare Sys. LP*, 534 F.3d 1116, 1121 (9th Cir. 2008) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)).

To avoid Rule 12(b)(6) dismissal, a complaint must plead sufficient factual allegations to "state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2008) (internal quotation marks and citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* The "mere possibility of misconduct" or "unadorned, the defendant-unlawfully harmed me accusation[s]" fall short of meeting this plausibility standard. *Id.* at 678–79. "Determining whether a complaint states a plausible claim is context specific, requiring the reviewing court to draw on its experience and common sense." *Id.* at 680 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

## III. ANALYSIS

The Proposed Amended Complaint lodges claims under two provisions of CIPA: Section 631 (*see* Proposed SAC ¶¶ 109–24) and Section 637.2 (*see id.* ¶¶ 125–31). However, Wright's Section 631 claim posits several variants under subsections of that statute. *See infra* Sec. III.A. Ulta claims all Wright's claims are felled by incurable deficiencies and, therefore, implores the Court to deny Wright's Motion with prejudice. While the Court agrees with Ulta that Wright's own allegations doom several of her theories of liability under Section 631 and her Section 637.2 claim in its entirety, the Court also finds that the Proposed Amended Complaint contains adequate factual allegations to support Wright's claim that Ulta is vicariously liable for Quantum's violation of Section 631. Hence, for the reasons stated below, the Court grants in part and denies in part Wright's Motion. (ECF No. 14.)

### A.     CIPA § 631

Titled the Wiretapping Act, Section 631 of CIPA prevents eavesdropping.   Cal. Penal Code § 631(a).  As expounded by United States District Judge Jon S. Tigar, Northern District of California, it creates four avenues of relief:

(1)     Where a person, "by means of any machine, instrument, or contrivance, or in any other manner, intentionally taps, or makes any unauthorized connection with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, Cable, or instrument" ("Clause 1").

(2)     Where a person "willfully and without the consent of all parties to the communication, or in any unauthorized manner reads or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit" ("Clause 2").

(3)     Where a person "uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained [by the means proscribed in Clauses 1 or 2]" ("Clause 3").

(4)     Where a person "aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above" ("Clause 4").

*Swarts v. The Home Depot, Inc.*, No. 23-cv-0995-JST, 2023 WL 5615453, at *5 (N.D. Cal. Aug. 30, 2023) (quoting Cal. Penal Code § 631(a)); *see also Javier v. Assurance IQ, LLC*, --- F. Supp. 3d ---, No. 20-cv-2860-CRB, 2023 WL 114225, at *4 (N.D. Cal. Jan. 5, 2023).

Wright alleges that Ulta aided and abetted Quantum to violate Clauses 1 through 3 of Section 631.  Ulta contends that there are a myriad of issues both with the facts alleged in the Second Amended Complaint and Wright's legal theories of liability that render her proposed amendments futile as to each variant of her Section 631 claim.

### 1.     Clause 1 of Section 631(a)

Clause 1 prohibits "any person who, by means of any machine, instrument, or contrivance, or in any other manner, intentionally taps or makes an unauthorized connection . . . *with any telegraph or telephone* wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal *telephonic* communication system."  Cal.

22cv1954

Penal Code § 631(a) (emphasis added).  Based on the statutory language of Clause 1 emphasized in the preceding sentence, most courts to address the issue have held that that Clause applies *only* to "telegraph and telephone" wires, lines, cables, or instruments," and not to internet connections.  *See, e.g.*, *In re Google Inc.*, No. 13-MD-2430-LHK, 2013 WL 5423918, at *20 (N.D. Cal. Sept. 26, 2013); *Williams v. What If Holdings, LLC*, No. C 22-3780 WHA, 2022 WL 17869275, at *2 (N.D. Cal. Dec. 22, 2022) ("[T]he first clause of Section 631(a) concerns telephonic wiretapping specifically and does not apply to the context of the internet."); *Javier*, 2023 WL 114225, at *4 n.3 ("As Defendants correctly argue, the first prong of Section 631 does not apply to internet communications[.]" (citing *Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1134–36 (E.D. Cal. 2021))).  This Court has adopted this interpretation in its previous rulings.  *See Greenley v. Kochava, Inc.*, No. 22-cv-1327-BAS-AHG, 2023 WL 48833466, at *16 (S.D. Cal. July 27, 2023).

Because Clause 1 is inapplicable to internet connections, prospective plaintiffs who allege their communications have been surreptitiously intercepted when using their smartphones as computers, *e.g.*, to access and browse the internet, are foreclosed from stating a claim under that sub-provision of Section 631.  *See Mastel*, 549 F. Supp. 3d at 1135 (holding that "[a]lthough [smartphones] contain the word 'phone' in their name, and have the capability of performing telephonic functions, they are, in reality, small computers"); *Licea v. Am. Eagle Outfitters, Inc.*, --- F. Supp. 3d ---, No. EDCV 22-1702-MWF (JPR), 2023 WL 249630, at *5 (C.D. Cal. Mar. 7, 2023) (rejecting the argument that the first clause of Section 631 applies to smartphones).

Here, Wright alleges that she "visited" the Website "from [her] cell phone[] and other mobile devices."  (Proposed SAC ¶ 38.)  The lone reasonable inference that arises from this allegation is that Wright used a smartphone to access Ulta's Website over the internet.  Hence, the communications that traversed between her mobile device and Ulta's servers fall outside the panoply of Clause 1 of Section 631.  *Cf. Swarts*, 2023 WL 5615453, at *6 (dismissing Clause 1 claim as inapposite to communications at issue where plaintiff merely alleged he "visited Defendants' website" via "his cellular telephone").  Wright

- 8 -

alleges that Clause 1 applies broadly to new technologies (*see* Proposed SAC ¶ 110), but as mentioned above, courts have rejected this argument with near uniformity.

Accordingly, the Court finds Wright's admission she utilized a cellular phone to access the Website renders futile any amendment of her Section 631 claim premised upon an alleged violation of Clause 1. *See Airs Aromatics, LLC v. Victoria's Secret Stores Brand Mgmt., Inc.*, 744 F.3d 595, 600 (9th Cir. 2014) ("A party cannot amend pleadings to 'directly contradict[t] an earlier assertion made in the same proceeding.'" (quoting *Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir. 1990))).

### 2.    Clause 2 of Section 631(a)

It is well-established that Ulta, itself, cannot be held liable under CIPA for recording to which it is a party—a principle known as the "party exception" to CIPA. *See Warden v. Kahn*, 99 Cal. App. 3d 805, 811 (1979) "[S]ection 631 . . . has been held to apply only to eavesdropping by a third party and not to recording by a participant to a conversation."); *see also Javier*, 2023 WL 114225, at *4. However, Clause 4 provides Wright with a mechanism to hold Ulta vicariously liable for Quantum's surreptitious recordings of communications, *see Swarts*, 2023 WL 5615453, at *6–7 (citing *Ribas v. Clark*, 38 Cal. 3d 355, 358 (1985)). *See* Cal. Penal Code § 631(a) (providing that defendant may be liable under CIPA when it "aids, agrees with, employs, or conspires with any person to unlawfully do, or permit, or cause to be done any of the acts or things" prohibited by Clauses 1 through 3).

Here, Wright seeks to hold Ulta liable for aiding Quantum to violate Clause 2. She avers that, "[b]y utilizing the session replay spyware, [Ulta's] co-conspirator [Quantum] willfully and without consent, read or attempted to read or learn the contents or meaning of electronic communications of Wright . . . while the electronic communications were in transit or passing over a wire, line, or cable[.]" (Proposed SAC ¶ 113.) Wright also avers that Ulta retained Quantum to provide its software services, including for spyware. (*Id.* ¶ 50; *see also id.* ¶ 53.) Ulta argues Wright's claim under Clause 2 fails for two independent reasons.

*First*, Ulta asserts that despite Wright's invocation of Clause 4, the "party exception" to CIPA still shields Ulta from liability because Quantum "operate[s] as a *de facto* recorder and extension of [Ulta], and not as a true 'third party' that is 'wiretapping' or 'eavesdropping' the communication." (MTD at 10:5–11:2; collecting cases.) Ulta's enunciation of CIPA's "party exception" as applied to Count 4 is correct. The question of whether Ulta is vicariously liable for Quantum's surreptitious recordings turns upon whether Quantum "has the capability to use its record of [Wright's interaction with Ulta] for any other purpose" beyond furnishing the record to Ulta. *See Yockey v. Salesforce, Inc.*, No. 22-CV-9067-JST, 2023 WL 5519323, at *5 (N.D. Cal. Aug. 25, 2023) (quoting *Javier*, 2023 WL 114225, at *6). After all, under California law, "[i]t is never a secret to one party to a conversation that the other party is listening to a conversation; only a third party can listen secretly to a private conversation." *Rogers v. Ulrich*, 52 Cal. App. 3d 894, 897 (1975). But the unsuspecting speaker's interest in privacy still remains intact when the eavesdropping third-party is nothing more than an appendage of a conversant, whose only purpose is to provide that conversant with records of the communication. *See Swarts*, 2023 WL 5615453, at *6–7 (interpreting California precedent in *Rogers*, 52 Cal. App. 3d at 894, and *Ribas v. Clark*, 38 Cal. 3d 355, 358 (1985), to enunciate a standard for application of the "party exception" to Clause 4 claims); *see also Yockey*, 2023 WL 5519323, at *5.

However, Ulta's application of this standard to the facts alleged in the Proposed Second Amended Complaint misses the mark. Ulta cites several cases where the defendant merely used a third-party recorder as a "tool" to capture data. (MTD at 10:12–11:2 (citing *What If Holdings*, 2022 WL 17869275, at *4; *Licea*, 2023 WL 2469630, at *8; *Johnson v. Blue Nile, Inc.*, No. 20-cv-8183, 2021 WL 1312771, at *2 (N.D. Cal. Apr. 8, 2021)). That is not how Quantum and its spyware were utilized, here, according to Wright. She explicitly alleges that the terms of Ulta's agreement with Quantum enabled Quantum to "use[] [Wright's] communications for *its own* commercial benefit." (Proposed SAC ¶ 80 (emphasis added).) In support of this averment, she cites the terms of Quantum's Privacy

- 10 -

Policy, which state that Quantum "shall have the right" to use its recordings "to improve and enhance the Quantum Technology and for other development, diagnostic and corrective purposes in connection with the Quantum Service and other Quantum offerings, and to disclose such data solely in aggregate or other de-identified form in connection with its business." (*Id.*)  At this stage, allegations that Quantum retains the right to analyze and distribute recorded communications for independent purposes are sufficient to demonstrate that the "party exception" to CIPA does not shield Ulta from Clause 4 liability.

*Second*, Ulta contends that to adequately state the underlying Clause 2 violation, Wright must allege Quantum captured Wright's communication "in transit."  (MTD at 11:5–13:5.)  Ulta claims that Wright pleads only conclusory averments concerning this element.  The Court disagrees.

Liability under Clause 2 arises when the purported CIPA violator "reads or attempts to read, a communication that is *in transit* or passing over any wire, line, or cable, or is being sent from, or received at any place within California."[2]  *Mastel*, 548 F. Supp. 3d at 1135 (quoting Cal. Penal Code § 631(a).)  Other courts have held that, at the motion to dismiss stage, a plaintiff is not expected to prove or even know how and when its communications were captured.  *See In re Vizio, Inc. Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1228 (C.D. Cal. 2017).  Indeed, a pleading standard to the contrary would require the CIPA plaintiff to engage in a one-sided guessing game, for the relevant information about data capture typically resides uniquely in the custody and control of the CIPA defendant and its third-party recorder.  However, a CIPA plaintiff "must provide fair notice to [d]efendant" of how and when she "*believe*[*s*]" the defendant or the conspiring third-party intercepts her communications.  *Id.*; *see also Licea*, 2023 WL 2469630, at *9

---

[2] Unlike Clause 1, Clause 2 applies to internet-based communications.  *In re Google*, 2013 WL 5423918, at *20 ("[T]he Court finds no reason to conclude that the limitation of 'telegraphic or telephone' on 'wire, line, cable, or instrument' in the first clause of the statute should be imported to the second clause of the statute.").

("Plaintiffs must provide more than conclusory allegations that messages were intercepted 'during transmission in real time.'").

Wright proffers sufficient facts to support the "in transit" requirement of Clause 2. She alleges that when she visited the Website, Quantum's embedded JavaScript "immediately load[ed] onto [her] device," thereby installing Quantum's session spyware . (Proposed SAC ¶¶ 46, 47.)  With Quantum's spyware active, Wright's communications still "travel[led] their normal path between [her] device and [Ulta]'s servers, but the communications [were] tapped and copied and sent to Quantum's servers as well," unbeknownst to her.  (*Id.* ¶¶ 49–50.)  Crucially, Wright alleges "that the communications [her] device sent to [Ulta] often arrived at Quantum's servers *before* they arrived at [Ulta]'s servers, even if only by a millisecond."  (*Id.* ¶ 89 (emphasis added).)  This averment is more than a conclusory recitation of the elements of a Clause 2 violation and, therefore, suffices to establish Quantum captured Wright's communications "in transit" at this early stage of the litigation.

Accordingly, the Court finds this variant of Wright's Section 631 claim is not futile and, thus, grants Wright's leave to pursue the Section 631 claim in her proposed Second Amended Complaint, to the extent it is premised upon an alleged violation of Clause 2 vis a vis Clause 4.

### 3.    Clause 3 of Section 631(a)

Ulta does not present any argument as to why Wright's claim that it aided and abetted Quantum's violation of Clause 3 is deficient.[3]  Therefore, Ulta fails to bear its "burden of demonstrating why leave to amend should not be granted." *Genentech*, 127 F.R.D. at 530–31.  Accordingly, the Court grants Wright leave to pursue the Section 631 claim in her proposed Amended Complaint, to the extent it is premised upon an alleged violation of Clause 3 vis a vis Clause 4.

---

[3] Ulta argues that Wright fails to plead a Clause 3 claim because she has failed to state a claim under Clause 1 or 2.  But for the reasons stated above, *see supra* Sec. III.A.2, Wright *does* adequately state a Clause 2 claim, rendering Ulta's lone argument directed at Clause 3 inapposite.

22cv1954

### B.   CIPA § 632.7

"[C]ourts applying § 632.7 have characterized the statute as prohibiting the intentional recording of any communication without the consent of all parties where one of the parties is using a cellular or cordless telephone." *McCabe v. Six Continents Hotels, Inc.*, No. 12-cv-4818 NC, 2014 WL 465750, at *3 (N.D. Cal. Feb. 3, 2014).   Section 632.7(a) states:

> Every person who, without the consent of all the parties to a communication, intercepts or receives and intentionally records, or assists in the interception or reception and intentional recordation of, a communication transmitted between two cellular radio telephones, a cellular radio telephone and a land telephone, two cordless telephones and a landline telephone, or a cordless telephone and a cellular radio telephone, shall be punished by a fine.

Cal. Penal Code § 632.7.

Ulta contends that Wright's Section 632.7 claim is felled for the same reasons that doomed her claim under Clause 1 of Section 631:  Wright admits she used a cellular device to access the Website, and communications originating from smartphones are not covered by Section 632.7.  (MTD at 17:23–18:11.)  The Court agrees, and adopts the reasoning in *Licea*, 2023 WL 2415592, at *2, and *Mastel*, 549 F. Supp. 3d at 1135, that when a consumer utilizes a phone to access a website over the internet, the phone "functions as a computer, not a phone." *Mastel*, 549 F. Supp. 3d at 1135.  If Section 632.7 is to apply to newer technologies, like cell phones that operate as hand-held computers, it must be because California's Legislature amended the statute to incorporate such technologies. *See Smith v. LoanMe, Inc.*, 11 Cal. 5th 183, 202 n.10 (2021).

Accordingly, the Court finds Wright's admission she used a cellular phone to access the Website renders amendment of her Section 632.7 claim futile. *See Airs Aromatics*, 744 F.3d at 600.

### IV.   CONCLUSION

For the reasons set forth above, the Court **GRANTS IN PART AND DENIES IN PART** Wright's Motion for Leave to Amend.  (ECF No 14.)  Specifically, the Court

**DENIES WITH PREJUDICE** Wright's Motion to the extent she seeks to move forward with her Section 631 claim premised on Clause 1 of that Statute and her Section 632.7 claim.  However, the Court **GRANTS** Wright's request to amend her Section 631 claim alleging Ulta aided and abetted violations of Clauses 2 and 3 of Section 631.  The Court **ORDERS** Wright to file a revised Second Amended Complaint that is consistent with this Order **by no later than September 22, 2023**.

The Court further **TERMINATES AS MOOT** Ulta's Motion to Dismiss Wright's First Amended Complaint.  (ECF No. 13.)  *See Ramirez v. Cnty. of San Bernadino*, 806 F.3d 1002, 1008 (9th Cir. 2015) ("It is well-established in our circuit that an 'amended complaint supersedes the original, the latter being treated thereafter as non-existent.'" (quoting *Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1474 (9th Cir. 1997))).

**IT IS SO ORDERED.**

**DATED: September 8, 2023**

Hon. Cynthia Bashant
United States District Judge

- 14 -

22cv1954